OPINION
THOMPSON, Judge.
¶ 1 This special action arises out of the trial court’s temporary order in a paternity action brought by Molly Lambertus (Mother) against Tyler Day (Father) ordering that paternal grandmother Linda Faye Day-Strange (Grandmother) receive two hours of visitation per week with Child. For the following reasons, we accept jurisdiction and deny relief.
FACTUAL AND PROCEDURAL HISTORY
¶2 Child was born on August 28, 2013. Father, who is serving a lengthy prison sentence [1], signed an acknowledgment of paternity. Mother obtained an amended birth certificate naming Father as Child’s biological father before filing the paternity action in December 2013. Grandmother filed a motion to intervene in the paternity action, which Mother did not object to and the trial court granted. In early February 2014, Grandmother filed a petition for grandparent visitation and a motion for a temporary order granting her visitation with Child. Mother filed a motion to strike Grandmother’s motion for temporary orders. Aso in February 2014, the court appointed a Court Appointed Advisor (CAA) to investigate Mother’s concerns about Grandmother and Father’s concerns about Mother, ordered Mother to undergo a hair follicle test,[2] and ordered Grandmother to undergo random alcohol testing.
¶ 3 In April 2014, the trial court held an evidentiary hearing on temporary orders. After taking testimony from the CAA, Mother, and Grandmother, the court ruled that, on a temporary basis, Grandmother would have two hours per week of visitation with Child at a pizza restaurant on the day and time selected by Mother beginning April 27, 2014. Visits were to take place only at the restaurant unless the parties agreed in writing to another location. The court further ordered stopping Grandmother’s random alcohol tests, with the caveat that Mother could discontinue any visit if she had concerns about Grandmother’s sobriety and Grandmother would then need to immediately go for alcohol testing.
¶4 Mother filed a motion with the trial court to stay the temporary orders, which the trial court denied. She filed this special action and a request for stay, which we denied after a hearing.
DISCUSSION
¶5 Special action jurisdiction is appropriate because the order complained of here is a temporary order granting visitation rights and there is no adequate and speedy remedy by appeal. See Finck v. Superior Court, 177 Ariz. 417, 418, 868 P.2d 1000, 1001 (App.1993); Ariz. R.P. Spec. Act. 1(a).
¶ 6 In her petition for special action, Mother argues that the trial court lacks subject matter jurisdiction to grant temporary visitation to Grandmother. She further argues that her right to due process was violated because she did not have sufficient time to prepare for the hearing on temporary orders.
¶ 7 Mother’s reference to “subject matter jurisdiction” with regard to the first issue is imprecise. Aticle 6, Section 14(1), of the Aizona Constitution gives the superior court original jurisdiction of “[cjases and proceedings in which exclusive jurisdiction is not vested by law in another court.” The superi- or court has original jurisdiction of paternity actions. Aizona Revised Statutes (AR.S.) § 12-123(A) (Supp.2013) provides that the superior court “ha[s] original and concurrent jurisdiction as conferred by the constitu-tion____” Section 12-123(B) further provides that “[t]he court, and the judges thereof, shall have all powers and may issue all writs *384 necessary to the complete exercise of its jurisdiction.” Section 25-801 (2007) provides that the superior court has original jurisdiction in proceedings to establish paternity and that “[a]ll such proceedings shall be civil actions.”
¶ 8 The question before us is whether the trial court had statutory or other authority to issue the temporary order for visitation in this case. We conclude that it did.
¶ 9 Arizona Revised Statutes § 25-409(C) (Supp.2013) provides:
Pursuant to § 25-402, subsection B, paragraph 2, a person other than a legal parent may petition the superior court for visitation with a child. The superior court may grant visitation rights during the child’s minority on a finding that the visitation is in the child’s best interests and that any of the following is true: ... (2) the child was born out of wedlock and the child’s parents are not married to each other at the time the petition for visitation is filed.
Arizona Revised Statutes § 25-404(A) (Supp. 2013) provides that “[a] party to a legal decision-making and parenting time proceeding may move for a temporary order.” The trial court determined here that Grandmother was a party to a legal decision-making and parenting time proceeding because she had intervened in the paternity action. Although not cited by the parties, AR.S. § 25-817 similarly provides, in relevant part:
A. Pending a judicial determination of paternity, the court shall issue a temporary order of support, and may issue a temporary order regarding custody and parenting time, if any of the following applies:
2. A notarized or witnessed statement is signed by both parents acknowledging paternity ... and filed with the department of health services pursuant to § 36-334 or filed with the department of economic security.
B. A temporary order issued pursuant to this section does not prejudice the rights of a person or child that are adjudicated at subsequent hearings in the proceeding.
C. A temporary order issued pursuant to this section may be revoked or modified and terminates when the final support, custody or parenting time order is entered or when the petition for support, custody or parenting time is dismissed.
¶ 10 Mother argues that Grandmother is not “[a] party to a legal decision-making and parenting time proceeding” under AR.S. § 25-404(A) and therefore the superior court lacked statutory authority to issue the temporary order for visitation. Although it is true that sections 25-404 and 25-817 do not contain the word “visitation,” A.R.S. § 25-402 (Supp.2013) does. Section 25-402 instructs the court to determine whether it has jurisdiction before “conducting] a proceeding concerning legal decision-making or parenting time, including a proceeding to determine the legal decision-making or visitation of a nonparent____” That provision evidences that the legislature intended visitation of a nonparent to be included under “legal decision-making or parenting time.”
¶ 11 Additionally, AR.S. § 12-123(B) provides that “[t]he court, and the judges thereof, shall have all powers and may issue all writs necessary to the complete exercise of its jurisdiction.” Superior court judges also have inherent authority “to conduct such proceedings and issue such orders as are necessary to the complete administration of justice----” Arpaio v. Baca, 217 Ariz. 570, 576, ¶ 19, 177 P.3d 312, 318 (App.2008) (citing Schavey v. Roylston, 8 Ariz.App. 574, 575, 448 P.2d 418, 419 (1968)). We conclude that the authority to make temporary orders as to grandparent visitation in an appropriate case is necessary to the court’s exercise of its jurisdiction over child custody and visitation issues.
¶ 12 Mother’s due process argument is without merit. Grandmother filed her petition for visitation on February 5, 2014. At the February 28,2014 hearing, the trial court appointed the CAA and ordered all parties, including Grandmother, to fully comply with the CAA’s investigation. The court set a *385 review hearing on Friday, April 18, 2014. The judge informed the parties that he would not enter temporary orders on April 18, but if temporary orders were still required he would hold a hearing within a week of that date.
¶13 The CAA filed her report on April 8, 2014. The court held the review hearing on Friday, April 18, 2014, ordered Grandmother to sign medical releases, and set the eviden-tiary hearing for Monday, April 21, 2014. Mother did not object at that time to the hearing being set on Monday, but by the end of the day she filed an emergency motion to continue the April 21 hearing. On the morning of the hearing, counsel for Mother objected that she had not had adequate time to prepare, and that she wanted more time than the twenty minutes per side the court had allotted.
¶ 14 By April 21, the court had had the CAA’s report for almost two weeks. Although Mother states in her reply that the parties did not receive the report until April 18, she acknowledges that she learned of the CAA’s “report and recommendations” about a week before the April 18 hearing. Grandmother did not dispute Mother’s allegations about her past alcohol abuse, and the CAA testified that Grandmother had been candid with her about her past problems with alcohol.
¶ 15 The trial court did not violate Mother’s due process rights in setting the eviden-tiary hearing on temporary orders when it did-more than two months after Grandmother filed her petition for visitation. Although Mother argues that the court “suddenly decided to set an evidentiary hearing,” all of the parties had known the course the judge planned to take because he let them know on February 28 that he would 1) get the report, 2) hold a review hearing on April 18, and 3) schedule the evidentiary hearing on temporary orders, if still needed, within a week of the April 18 hearing.
¶ 16 Both parties request attorneys’ fees pursuant to A.R.S. § 25-324 (Supp.2013). In our discretion, we decline to award attorneys’ fees.
¶ 17 For the foregoing reasons, we accept jurisdiction and deny relief.

. As of the February 28, 2014 hearing, Father had six and one-half years left to serve of his sentence.

. The court’s order stated ”[t]he Hair Follicle Test shall be for Screen B (most commonly abused 5 street drugs).”